United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GEORGE MOSKOWITE,

Plaintiff,

v.

EVEREN CAPITAL CORPORATION GROUP DISABILITY INCOME PLAN,

Defendant
/

No. C-03-4666 MMC (MED)

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; SETTING STATUS CONFERENCE**

Before the Court are two motions: (1) plaintiff George Moskowite's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and (2) defendant Everen Capital Corporation Group Disability Income Plan's motion for summary judgment or, in the alternative, summary adjudication, pursuant to Rule 56. Having considered the papers filed in support of and in opposition to the motions, the Court hereby rules as follows.[1]

**BACKGROUND**

On October 24, 1997, plaintiff filed with defendant a claim form, seeking long-term disability benefits under an employee benefits plan, available through plaintiff's then-

//

[1]At the pretrial conference conducted on November 2, 2004, the Court advised the parties the motions would be taken under submission on the papers.

employer, Everen Securities. (CF 1023.)[2] In order to be eligible for long-term benefits under the plan, the claimant must be "disabled," which is defined in the plan as follows:

> i. If the Covered Person is eligible for 24 Month Own Occupation Benefit, "Disability" or "Disabled" means during the Elimination Period and the next 24 months of Disability the covered Person is unable to perform all the material and substantial duties of his occupation on an Active Employment basis because of an Injury or Sickness; and
>
> ii. After 24 months of benefits have been paid is unable to perform, with reasonable continuity, all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.

(Gray Decl. Ex. A at P-006.)

On the claim form, plaintiff stated his impairments began March 10, 1996 as a result of an automobile accident, and that his last date of employment had been April 28, 1997. (CF 1023.) In an accompanying Physician's Statement, S.I. Spreiter, M.D., described plaintiff's diagnosis as "Thoracic Disc Syndrome[;] Depression." (CF 1024.)

On January 6, 1998, defendant approved plaintiff's claim for long-term disability benefits, effective October 24, 1997, based on a finding plaintiff was unable to perform the duties of his occupation. (CF 961-962.) Thereafter, on July 6, 2000, defendant informed plaintiff by letter that defendant was discontinuing his long-term disability benefits, effective July 7, 2000. (CF 95-101.) On July 19, 2005, plaintiff's wife, on behalf of plaintiff, requested that defendant review the decision to discontinue benefits. (Gray Decl. Ex. G at G-4.)

On January 3, 2001, defendant informed plaintiff that it was adhering to its decision to discontinue plaintiff's long-term disability benefits. (CF 80-84.) On October 23, 2003, plaintiff filed the instant action, alleging in his complaint that, pursuant to the Employee Retirement Income Security Act ("ERISA"), he is entitled to benefits under the plan.

//

//

---

[2]The claim file ("CF") is Exhibit B to the Declaration of Lisa Jellerson Gray.

**DISCUSSION**

The motions for summary judgment address defendant's limitations defenses, plaintiff's argument as to estoppel, and the appropriate standard for reviewing the merits of plaintiff's claim for benefits.[3] The Court addresses these issues, in turn.

**A. Limitations Defense**

In its answer, defendant alleges as its Fifth Affirmative Defense that plaintiff's ERISA claim is barred by "legal and contractual statute[s] of limitations." (See Answer, filed December 8, 2003, at 4:28-5:5.) Plaintiff argues that defendant cannot establish either component of its limitations defense.

**1. Statute of Limitations**

"[I]n ERISA actions the federal courts employ a state statute of limitations." Wang Laboratories, Inc. v. Kagan, 990 F. 2d 1126, 1128 (9th Cir. 1993) (internal quotation and citation omitted). "The limitations period applicable to ERISA claims is the one for breach of written contract." Id. Where an ERISA plan includes a choice of law provision, the selected forum's statute of limitations for breach of written contract applies. See id. at 1129.

Here, the plan contains a provision expressly stating that the plan is governed by Illinois law. (See Gray Decl., filed October 8, 2004, Ex. A at 1.) The Illinois limitations period for an action on a written contract is ten years. See Jenkins v. Local 705 Int'l Brotherhood of Teamsters Pension Plan, 713 F. 2d 247, 251 n. 6 (7th Cir. 1983) (citing Ill. Rev. Stat. ch. 110, § 13-206). The earliest date that plaintiff's claim could have accrued was July 6, 2000, when he was first informed that defendant was discontinuing his benefits. Because plaintiff filed the instant action within ten years of July 6, 2000, his claim is not barred by the statute of limitations. See id. at 254 (holding ERISA claim not time-barred, where plaintiff filed complaint within ten-year Illinois statute of limitations for action on

---

[3]As was discussed at the pretrial conference, to the extent defendant's motion addresses the merits of plaintiff's claim for benefits and defendant's defense of unclean hands, the motion is premature, and, accordingly, is DENIED without prejudice.

written contract).

Accordingly, plaintiff is entitled to summary judgment on the Fifth Affirmative Defense, to the extent it is based on the statute of limitations.

**2. Contractual Limitations**

The plan, in a section titled "Legal Proceedings," includes a provision limiting the time within which a claimant can institute legal action: "A claimant or the claimant's authorized representative cannot start any legal action: 1. until 60 days after proof of claim has been given; nor 2. more than one year after the time proof of claim is required." (See Gray Decl., filed October 8, 2004, Ex. A at 28.) Additionally, in a section titled "Notice and Proof of Claim," the plan provides that "[p]roof of continued [d]isability . . . must be given to [defendant] within 30 days of the request for the proof." (See id. Ex. A at 27.)

The Ninth Circuit, in Mogck v. Unum Life Ins. Co., 292 F. 3d 1025 (9th Cir. 2002), interpreted a contractual limitation provision indistinguishable in any material respect from the provision at issue herein,[4] and held that where a claimant seeks "continued disability benefits, not initial disability benefits," the district court, "in order to determine when the contractual limitation period began, [ ] must first determine when" the plan administrator made "a 'request for the proof,'" or asked for "a 'proof of claim.'" See id. at 1028 (emphasis in original). A contractual limitation period does not begin to run until the plan administrator utilizes the specific terms set forth in the limitation provision. See id. at 1028-29 (stating plan administrator "must utilize those basic terms and procedures "in order for the policy provision to be triggered"). Thus, in Mogck, where the plan administrator notified the claimant that benefits were being terminated, and stated that the claimant could submit "new additional information to support [his] request for disability benefits" and request review of the denial, see id. at 1027, but did not utilize the plan terms "proof," "request for the proof" or "proof of claim," the "time limitation provision was never rendered operative,"

[4]The contractual provision at issue herein and the provision interpreted in Mogck differ only in that the limitations period set forth in the provision addressed in Mogck was three years. See id. at 1028.

see id. at 1028-29.

Here, defendant argues that the sixth page of its July 6, 2000 letter to plaintiff, by which letter defendant informed plaintiff he was no longer eligible for long-term disability benefits, (see CF 100), constituted the requisite "request for the proof" or request for "proof of claim" to trigger the running of the one-year contractual limitation period. The cited page advised plaintiff of his right under ERISA to "request a review," and informed plaintiff that such request must "state the reasons" plaintiff believed his benefits should not be discontinued. (See CF 100.) Additionally, in discussing the content of such a request for review, the letter, at that page, stated: "Include documentation such as diagnostic test results, neurosurgical consultations, psychiatric consultations, neuropsychological test results, psychotherapy records, Physical Therapy records or other objective medical information which you think will support your claim." (See id.) Neither the sixth page of the July 6, 2000 letter nor any other part of the letter, however, utilizes the plan language; in other words, defendant never made a "request for the proof" or asked for "proof of claim." (See id.) Consequently, "the policy's time limitation provision was never rendered operative." See Mogck, 292 F. 3d at 1028-29; see also Skipper v. Claims Service Int'l, 213 F. Supp. 2d 4, 8 (D. Mass. 2002) ("It would be ridiculous, and grossly unfair, to suggest that defendants' mere expression of a willingness 'to review pertinent additional information,' [as stated in the letter terminating benefits], should be construed as a request for 'proof of loss' or as notice of the commencement of the [contractual] limitation period.") As a result, the language included in defendant's July 6, 2000 letter is, as a matter of law, insufficient to trigger the running of the one-year contractual limitations period.

Accordingly, plaintiff is entitled to summary judgment on the Fifth Affirmative Defense, to the extent it is based on the contractual limitations provision.

**B. Social Security Award**

On July 8, 2000, the Social Security Administration ("SSA") found plaintiff was, for purposes of the Social Security Act, disabled. (See Corrected Rosati Decl. Ex. 22.) On August 30, 2000, the SSA notified plaintiff that he would receive benefits retroactive to

October 1997. (See id. Ex. 23.) As noted, defendant determined plaintiff was, for purposes of the plan, disabled as of October 1997, but not disabled as of July 7, 2000.

Plaintiff argues that, irrespective of the standard of review, he is, as a matter of law, entitled to continued plan benefits in light of the SSA's decision that he is disabled. Plaintiff also argues that defendant is, as a matter of law, estopped from denying plaintiff is disabled because defendant "encourage[d]" plaintiff to apply for Social Security disability benefits, (see CF 258-260), and defendant, after plaintiff received such benefits, asserted an off-set, (see CF 18; Corrected Rosati Decl. Ex. 10). The Court disagrees.

A decision by the SSA to award a claimant Social Security benefits is not binding on a plan administrator. See, e.g., Madden v. ITT Long Term Disability Plan, 914 F. 2d 1279, 1285 (9th Cir. 1990) (affirming plan administrator's decision denying disability benefits, even though claimant received SSA benefits, because claim file contained evidence in support of plan administrator's decision); Calvert v. Firstar Finance, Inc., 266 F. Supp. 2d 578, 585-86 (W.D. Ky.) (noting one reason SSA decisions are not binding on plan administrators is that SSA applies "treating physician rule" while plan administrators are not limited thereby).

Further, plaintiff cites no case, and the Court has located none, in which a court has determined a claimant to be entitled to plan benefits solely because the plan administrator encourages a claimant to apply for SSA benefits and thereafter offsets plan benefits by SSA benefits. Rather, courts have held such conduct "'does not provide an independent basis'" for judgment in favor of the claimant. See Darland v. Fortis Benefits Ins. Co., 317 F. 3d 516, 530, 533 (6th Cir. 2003) (quoting Ladd v. ITT Corp., 148 F. 3d 753, 755-56 (7th Cir. 1998)).[5]

Accordingly, plaintiff has not shown that he is entitled, as a matter of law, to judgment based on the fact that the SSA determined plaintiff to be disabled or that

---

[5]The Court notes, however, that a denial of benefits under such circumstances may be deemed "inconsistent," see Darland, 317 F. 3d at 530, and may "cast additional doubt on the adequacy of [the plan's] evaluation of [the plaintiff's] claim," see Ladd, 148 F. 3d at 533.

defendant encouraged plaintiff to seek Social Security benefits.

**C. Standard of Review**

The parties disagree as to whether the Court should review defendant's termination of plaintiff's benefits de novo or for abuse of discretion.

"Depending upon the language of an ERISA plan, a district court reviews a plan administrator's decision to deny benefits either de novo or for abuse of discretion." Ingram v. Martin Marietta Long Term Disability Income Plan, 244 F. 3d 1109, 1112 (9th Cir. 2001). "The de novo standard is appropriate unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. (internal quotation and citation omitted).

Here, the plan language includes language that unambiguously provides the administrator with authority to determine eligibility for benefits and to construe the terms in the plan: "[Defendant] shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine eligibility hereunder." (See Gray Decl. Ex. A at P-025.) Plaintiff argues, however, that irrespective of the above-quoted plan language, he is entitled to de novo review, on the ground that discretionary clauses are unenforceable under state law or, alternatively, that defendant acted with an actual conflict of interest.

**1. Enforceability of Discretionary Clauses**

In February 2004, the California Department of Insurance ("DOI") issued a notice in which it expressed the opinion that "discretionary clauses" are "objectionable" under California law and stated that the DOI would, subject to the outcome of an administrative hearing, revoke approval of certain policies that included discretionary clauses. (See Corrected Rosati Decl., filed October 29, 2004, Ex. 24 at 1.) Although the DOI's notice does not refer to the policy at issue herein, plaintiff argues that the notice establishes that "discretionary clauses" are illegal under California law and that, accordingly, defendant cannot rely on the discretionary clause in the plan. The Court disagrees.

//

//

Initially, the Court notes that the Supreme Court has held that a "benefit plan [may] give[ ] the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). In any event, the DOI has explained that its notice "does not effect policies already sold," see Davison v. Hartford Life and Accident Ins. Co., 2005 WL 807045, *1 (N.D. Cal. 2005); thus, the DOI's notice is inapplicable to the instant policy, which was issued in 1995, (see Gray Decl. Ex A at P-001). Further, defendant should be entitled to rely on any prior approval of the policy by the DOI, because such approval necessitated a finding by the DOI that said policy did not contain provisions that are "unintelligible, uncertain, ambiguous, or abstruse, or likely to mislead a person to whom the policy is offered, delivered or issued." See Cal. Ins. Code § 10291.5(b)(1).

Accordingly, plaintiff has not shown that the discretionary policy is unenforceable.

**2. Conflict of Interest**

Defendant is both the insurer of the plan and the plan administrator. (See Curry Decl., filed October 7, 2004, ¶ 3.) As such, defendant has an apparent "conflict of interest." See Tremain v. Bell Industries, Inc., 196 F. 3d 970, 976 (9th Cir. 1999). Plaintiff argues that, in the instant case, defendant's conflict of interest affected its decision-making, and, consequently, he is entitled to de novo review.

Where a claimant offers "material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary," a presumption arises that the administrator, in fact, breached its fiduciary obligations to the beneficiary. See Hensley v. Northwest Permanente P.C. Retirement Plan & Trust, 258 F. 3d 986, 995 (9th Cir. 2001). "[M]aterial, probative evidence may consist of inconsistencies in the plan administrator's reasons, insufficiency of those reasons, or procedural irregularities in the processing of the beneficiaries claims," Nord v. Black & Decker Disability Plan, 356 F. 3d 1008, 1010 (9th Cir.) (internal quotation and citation omitted), cert. denied, 125 S. Ct. 62 (2004), as well as the failure to provide a claimant a "'full and fair' appeals procedure," see Friedrich v. Intel

Corp., 181 F. 3d 1105, 1110 (9th Cir. 1999) (quoting 29 U.S.C. § 1133(2)). Where a plaintiff meets his initial burden, "the plan must rebut the presumption by producing evidence to show that the conflict of interest did not affect its decision to deny or terminate benefits." See Hensley, 258 F. 3d at 995. If the plan fails to rebut the presumption, the district court reviews the administrator's decision to deny benefits under the de novo standard. See id.

Here, plaintiff argues that because the claim file is missing certain documents and because defendant, in handling plaintiff's appeal, violated certain ERISA regulations, he is entitled to a presumption that defendant breached its fiduciary obligations to him.

**a. Missing Documents**

The parties agree that the claim file is missing documents.[6] Although plaintiff argues that defendant intentionally destroyed or removed the documents, plaintiff has not offered evidence, let alone the requisite material, probative evidence, tending to prove any intentional act. In the absence of such evidence, it would appear defendant's failure to provide a complete claim file is a result of negligence or inadvertence.

Plaintiff does not offer any authority, and the Court has located none, in support of an argument that a plan administrator's negligent or inadvertent loss of records constitutes material, probative evidence tending to show a breach of fiduciary duty. Further, as it appears the loss of documents occurred after the final decision to terminate benefits had been made, there does not appear to be any causal connection between the loss and the decision. In any event, it appears the deficiencies can be cured by supplementation of the record. Indeed, plaintiff has offered, without objection by defendant, a number of documents plaintiff states are copies of documents that initially were in the claim file and

---

[6]Plaintiff has identified approximately 25 documents he believes are missing from the record. (See Pl.'s Mot., filed October 7, 2004, at 6:19 - 8:10.) Defendant concedes the record is missing at least 21 documents. (See Def.'s Opp. to Pl.'s Mot., filed October 29, 2004, at 3:8.)

are now missing. (See Corrected Rosati Decl., filed October 29, 2004, Exs. 7-22.)[7]

Accordingly, defendant's failure to provide the district court with a complete record does not, under the circumstances herein, warrant a change in the standard of review.

**b. Untimely Issuance of Appeal Decision**

Defendant issued its decision denying plaintiff's appeal 168 days after plaintiff requested review. In doing so, defendant violated a federal regulation providing that a decision determining an appeal must be issued no later than 120 days from the date of the plan's receipt of the request. See former 29 C.F.R. § 2560.503-1(h)(1)(i) (providing 60-day time limit for plan to issue decision on request for review, and providing such limit may, under certain circumstances, be extended an additional 60 days).[8]

Plaintiff argues that defendant's failure to comply with former § 2560.503-1(h)(1)(i) entitles him to a presumption that defendant breached its fiduciary duties. This argument, however, is foreclosed by recent Ninth Circuit authority holding that a plan administrator's violation of § 2560.503-1(h)(1)(i) does not implicate the standard of review. See Gatti v. Reliance Standard Life Ins. Co., — F. 3d — , 2005 WL 1705509 (9th Cir. 2005) (holding where plan administrator fails to comply with time limit in former § 2560.503-1(h), plaintiff entitled to deem administrative remedies exhausted, but not entitled to de novo review because "violations of the time limits established in 29 C.F.R. § 2560.503-1(h) are

---

[7]To the extent there are other documents plaintiff states are missing, and of which plaintiff does not have copies, plaintiff may seek to supplement the file by other means. In ERISA cases where a defendant offers an incomplete claim file, district courts have allowed the plaintiff considerable leeway in bringing before the district court the material contained in the missing documents. For example, in Cannon v. Unum Life Ins. Co., 219 F.R.D. 211 (D. Me. 2004), where the claim file was missing a "medical update" authored by a physician hired by the defendant, the district court ordered that if the defendant was unable to produce that document, plaintiff would be allowed to depose the claim reviewer to learn the content of the document. See id. As another example, in Sheehan v. Metropolitan Life Ins. Co., 368 F. Supp. 2d 228 (S.D.N.Y. 2005), where the record was missing "several medical documents relevant to [the plaintiff's] claim," the district court allowed the plaintiff, at a court trial, to present testimony from physicians who had authored the missing documents. See id. at 254.

[8]Former § 2560.503-1(h)(1) is applicable to plaintiff because he filed his claim for benefits prior to 2002. See Gatti v. Reliance Standard Life Ins. Co., — F. 3d — , 2005 WL 1705509, *2 n. 1 (9th Cir. 2005) (observing § 2560.503-1(h)(1) applicable to claims filed before 2002).

insufficient to alter the standard of review").[9]

**c. Right to Review Documents**

Plaintiff argues that defendant violated former 29 C.F.R. § 2560.503-1(g)(1)(ii) when it did not advise him, in the initial denial letter, of his right to review the documents upon which defendant based its initial denial.

At the time plaintiff filed his claim and the claim was initially denied, the Code of Federal Regulations provided as follows:

> Every plan shall establish and maintain a procedure by which a claimant or his duly authorized representative has a reasonable opportunity to appeal a denied claim to an appropriate named fiduciary or to a person designated by such fiduciary, and under which a full and fair review of the claim and its denial may be obtained. Every such procedure shall include but not be limited to provisions that a claimant or his duly authorized representative may:
>
> (i) Request a review upon written application;
>
> (ii) Review pertinent documents; and
>
> (iii) Submit issues and comments in writing.

See former 29 C.F.R. § 2560.503-1(g).

Under the above-cited regulation, defendant argues, it is not required to advise a claimant of the right to "review pertinent documents," but only to allow a claimant to review such documents if the claimant affirmatively requests to do so. Courts that have considered defendant's argument, however, have rejected it. See Ellis v. Metropolitan Life Ins. Co., 126 F. 3d 228, 237 (4th Cir. 1997) ("A plan administrator or fiduciary must inform a claimant that, should she desire to submit her claim for review following an initial denial, she is entitled to review the pertinent documents upon which the initial denial decision was predicated."); Soron v. Liberty Life Assurance Co., 318 F. Supp. 2d 19, 27 (N.D.N.Y. 2004) (holding former 29 C.F.R. § 2560.503-1(g) "require[s] an administrator to inform a claimant,

[9] The Ninth Circuit issued its decision in Gatti after the briefing on the instant motions was complete.

at whatever level, of her right to review pertinent documents").[10]

The Court agrees with the above-cited authorities. As noted, the regulation requires that an ERISA plan include a procedure allowing claimants to "review pertinent documents." See former 29 C.F.R. § 2560.503-1(g). If, as defendant argues, the regulation merely requires a plan administrator to permit such review when a claimant affirmatively requests review, the regulation would have little substance, particularly where, as here, a claimant is not represented by counsel at the time of the denial and the plan documents are silent as to the appeal process.[11]

As noted, "material, probative evidence" sufficient to satisfy the plaintiff's initial burden to show a breach of fiduciary duty can include "procedural irregularities in the processing of the beneficiaries claims." See Nord, 356 F. 3d at 1010. Defendant's failure to comply with its obligation to inform plaintiff of his right to review the documents on which defendant based its initial decision to terminate benefits constitutes a procedural irregularity. Accordingly, plaintiff is entitled to a rebuttable presumption that defendant breached its fiduciary obligations to him. See Hensley, 258 F. 3d at 995.

In rebuttal, defendant argues it took other action that sufficed to fully apprise plaintiff of the bases for the initial denial.

With respect to medical reports cited in support of the initial denial, defendant provided copies thereof directly to plaintiff's treating psychiatrist, Michael H. Moskowitz, M.D. ("Dr. Moskowitz"), and to plaintiff's treating orthopedic surgeon, James B. Reynolds

---

[10]Even before the regulation on which plaintiff relies was enacted, courts had interpreted ERISA itself to require that a plan administrator, when it denied a claim for benefits, "invite [the claimant] to examine [the] evidence" on which the plan administrator had relied. See, e.g., Grossmuller v. International Union, United Automobile Aerospace and Agricultural Implement Workers of America, Local 813, 715 F. 2d 853, 858 (3rd Cir. 1983) (citing 29 U.S.C. § 1133, by which plan administrator is required to afford "reasonable opportunity to any participant whose claim for benefits has been denied for a full and a fair review [of the denial]").

[11]The policy, which is only the plan document offered by defendant, does not address, even in passing, the appeal process. Thus, even if plaintiff had a copy of the policy at the time his claim was initially denied and had reviewed the policy in an attempt to determine what appeal rights he had, he would have learned nothing.

("Dr. Reynolds"), and asked both physicians to state any disagreements therewith, (see CF 168-69, 232); both physicians responded with comments and disagreements, (see Corrected Rosati Decl. Exs, 9, 15). Had defendant informed plaintiff of his right to obtain copies of the above-referenced medical reports, and had plaintiff then requested such reports, it is difficult to conceive how plaintiff would have made better use of those reports than by asking his treating physicians to respond thereto.

With respect to a vocational study cited as evidence in support of its initial denial, defendant sent plaintiff, along with the initial denial letter, a copy of that study, (see CF 101), and, consequently, plaintiff clearly was not harmed by defendant's failure to advise plaintiff of his right to review such study.

The initial denial also sets forth "observations" made of plaintiff on specific dates. (See, e.g., CF 97 ("On May 12, 2000, you were observed driving to the Vintage Bank and Moss Creek Winery.").) As to each date of "observation," the initial denial letter sets forth the particular observation(s) made, thus providing plaintiff with notice of the particular activities defendant was of the view supported a denial of benefits. (See CF 96-97.)

Accordingly, defendant having shown that its failure to inform plaintiff of his right to review the documents on which the denial was based did not result in any substantive harm to plaintiff or affect defendant's decision-making, defendant's violation of the regulation does not warrant a change in the standard of review.

**d. Consideration of Documents Submitted on Appeal**

Plaintiff argues that defendant failed to provide plaintiff with a full and fair appeal because defendant did not consider certain documents submitted by plaintiff in support of his appeal. Rather, according to plaintiff, defendant acknowledged receipt of them, but did not analyze or evaluate them. Specifically, plaintiff argues that defendant did not consider plaintiff's undated letter setting forth his daily activities and discussing his experiences with pain, (see Corrected Rosati Decl. Ex. 14), an April 17, 2000 letter authored by Dr. Reynolds, (see id. Ex. 9), Dr. Reynolds's office notes dated June 22, 2000 and September 26, 2000, (see id. Ex. 20), and a July 6, 2000 letter authored by Dr. Moskowitz, (see id. Ex.

15).

Defendant, in its final denial letter, stated that it had conducted a "review" of "all" of the evidence submitted by plaintiff in support of the appeal. (See CF 74.) Although not directly expressed, plaintiff appears to contend that such statement is false. Plaintiff, however, fails to offer any material, probative evidence to support a finding that defendant, after receiving the above-referenced documents, ignored them instead of considering them.[12]

Accordingly, plaintiff has not shown that the manner in which defendant addressed documents submitted in support of plaintiff's appeal warrants a change in the standard of review.

**CONCLUSION**

For the reasons stated above, plaintiff's motion for summary judgment is GRANTED in part and DENIED in part, and defendant's motion for summary judgment is GRANTED in part and DENIED in part, as follows:

1. Plaintiff is entitled to summary judgment with respect to defendant's Fifth Affirmative Defense, alleging that plaintiff's claim is barred by statutory and contractual periods of limitation. In all other respects, plaintiff's motion is denied.

2. Defendant's decision to deny plaintiff's claim for benefits will be reviewed for abuse of discretion. In all other respects, defendant's motion is denied.

//

//

//

//

//

//

---

[12]Further, although the burden has not shifted to defendant as to this issue, the Court notes that defendant offered affirmative evidence in the form of notes to establish that the above-referenced letters authored by Dr. Reynolds and Dr. Moskowitz were analyzed by defendant's neuropsychological consultant. (See CF 92.)

The Court will conduct a case management conference on October 21, 2005, at 10:30 a.m. A joint case management conference statement shall be filed no later than October 14, 2005.[13]

**IT IS SO ORDERED.**

Dated: August 10, 2005

MAXINE M. CHESNEY
United States District Judge

---

[13] In the joint statement, the parties should address, inter alia, the appropriate procedure(s) by which to supplement the record, to the extent copies of missing documents cannot be located, as well as the procedure by which the merits of the defense of unclean hands should be determined.